Filed 1/25/24  Gottlieb v. Gottlieb CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LAURA GOTTLIEB, Individually, and as Guardian, etc.,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>RICHARD J. GOTTLIEB, as Trustee, etc.,<br><br>      Defendant and Respondent. | B318443<br>(Los Angeles County<br>Super. Ct. No. 20STCV46738)<br><br>ORDER MODIFYING MAJORITY OPINION (CHANGE IN JUDGMENT) AND DENYING RESPONDENT'S PETITION FOR REHEARING; AND ORDER MODIFYING DISSENTING OPINION |

The majority opinion in the above-entitled matter filed on December 29, 2023 is modified as follows:

1.  On page 16, the entire sentence beginning with "At an evidentiary hearing, Laura could have further explored" is deleted and replaced with the following sentence:

At an evidentiary hearing, Laura could have further explored the declarants' general description of the materials through cross-examination, or even requested that the court assist in analyzing the issue of whether

the materials contained attorney-client privileged content and whether any privileged materials were germane to Laura's claim, to the extent permitted by applicable law.

2. On page 20, the disposition is deleted and replaced with the following:

## DISPOSITION

The trial court's order granting Richard's motion for terminating sanctions is reversed. Upon remand, if a ruling on the motion for terminating sanctions is still necessary to resolve the action, the trial court shall hold an evidentiary hearing on Richard's motion for terminating sanctions, and conduct any further proceedings that it deems necessary and proper.

The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.

_____

These modifications constitute a change in the judgment.

Respondent's petition for rehearing filed on January 10, 2024 is denied.

_____

ROTHSCHILD, P. J.                    WEINGART, J.

2

The dissenting opinion filed on December 29, 2023 is modified as follows:

On page 2, the first two sentences of the first full paragraph, beginning "As to the issue" are deleted and the following two sentences are inserted in its place:

As to the issue of whether the materials Laura took contained attorney-client privileged information, the majority holds that an evidentiary hearing was required so Laura could "explore" the general descriptions submitted of those materials or could ask the court to help analyze whether the materials were privileged and, if so, whether they were germane to Laura's claim.  Laura did not need an evidentiary hearing to request the court's aid—such a request could have been made in writing, or orally by Laura's counsel at the hearing.

I would grant respondent's petition for rehearing filed on January 10, 2024.

_____

CHANEY, J.

Filed 12/29/23  Gottlieb v. Gottlieb CA2/1 (unmodified opinion)
# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LAURA GOTTLIEB, Individually, and as Guardian, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> RICHARD J. GOTTLIEB, as Trustee, etc., <br><br> Defendant and Respondent. | B318443 <br><br> (Los Angeles County Super. Ct. No. 20STCV46738) |

APPEAL from an order of the Superior Court of Los Angeles County, Jonathan L. Rosenbloom, Judge. Reversed with directions.

Oldman, Sallus & Gold, Mary-Felicia Apanius and Marshal A. Oldman for Plaintiff and Appellant.

Sacks, Glazier, Franklin & Lodise, Robert N. Sacks and John A. Scheerer for Defendant and Respondent.

Appellant Laura Gottlieb initiated two lawsuits against her brother, respondent Richard Gottlieb, concerning their father Daniel Gottlieb's trust: a civil case (resulting in the instant appeal) and a petition in probate court.[1] The court found the two cases were related and based on the same factual allegations.

Richard filed motions seeking terminating sanctions in both cases. The motions were identical in substance, both claiming that the case could not continue because, before Laura filed the complaint and petition, she had improperly removed attorney-client privileged files from Daniel's office. At a consolidated hearing on both motions, the court denied Laura's request for a full evidentiary hearing and granted both of Richard's sanctions motions.

Laura appealed the sanctions order in the instant civil case, but not the corresponding order in the probate case. On appeal, Laura argues the court reversibly erred by granting the motion for terminating sanctions, both because the court improperly refused to hold a full evidentiary hearing on it, and because terminating sanctions were too harsh a penalty. Richard disagrees and also argues the unappealed order imposing terminating sanctions in the probate case collaterally estops Laura from challenging the sanctions ruling in the instant case.

We conclude that the parties did not "actually litigate" the findings necessarily underlying the court's sanctions order in the probate case, as they must have done in order for these findings to have collateral estoppel effect in the instant case.

---

[1] Because several individuals relevant to the instant appeal share the surname Gottlieb, we refer to them by their first names. No disrespect is thereby intended.

2

(*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825
(*DKN Holdings*).) We therefore reach the merits of Laura's
appeal and conclude the court abused its discretion in denying
Laura an evidentiary hearing to resolve material factual
disputes. Accordingly, we reverse the order imposing
terminating sanctions, remand with instructions that the trial
court hold an evidentiary hearing on the motion for sanctions
in the instant civil case, and need not reach Laura's remaining
arguments on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Laura's Lawsuits Against Richard

#### 1. *The Instant Civil Case*

On December 7, 2020, Laura filed a verified complaint on
behalf of herself and Daniel[2] against Richard (as an individual,
as the trustee to Daniel's trust, and as the trustee to Richard's
own trust) and others (the civil case). Laura alleged that Richard
had taken advantage of Daniel's failing health to install himself
as sole trustee of Daniel's trust, and then administered the
trust to benefit himself personally at the expense of the other
beneficiaries, including Laura. Laura alleged Richard engaged
in numerous types of misconduct, including "exert[ing] undue
influence over a third party to forge [Laura's] signature on
pertinent documents."

---

[2] Based on the current record, Laura is not the guardian
ad litem for her father, although she did serve in this capacity
from approximately December 2020 through April 2021. In June
2021, the court appointed an independent, third-party guardian
ad litem.

3

The defendants demurred to the complaint, and the court sustained the demurrer without leave to amend as to Richard in his capacity as the trustee of Daniel's trust only, but with leave to amend as to Richard in his personal capacity and all other defendants.[3]

## 2. *The Trust Case*

A day after filing her civil complaint against Richard, Laura filed a verified petition in probate court to: (1) suspend and remove Richard as trustee, (2) recover trust assets, (3) compel redress of breaches of trust, (4) appoint an independent trustee, and (5) recover attorney fees and costs (the trust case).

The court deemed the cases related, finding "[t]he same operative facts are alleged in both cases," that "both cases clearly 'arise from the same' series of specific events" and that both cases would " 'requir[e] the determination of the same or substantially identical questions of . . . fact.' "[4]

---

[3] The record on appeal does not appear to contain the amended complaint that, based on the parties' representations in their appellate briefing, Laura presumably filed following this demurrer ruling.

[4] The court sustained Richard's demurrer to an amended petition in the trust case without leave to amend and denied the amended complaint with prejudice. An order to this effect was filed on November 29, 2021. It is unclear from the record on appeal what aspects of the trust case the parties were still litigating after that point, although the court's order did indicate that it would hold a hearing related to expunging certain lis pendens that Laura later removed voluntarily.

4

## B. Richard's Motions for Terminating Sanctions

### 1. *Motions and Supporting Declarations*

In July 2021, Richard filed two substantively identical motions for terminating sanctions, one in the civil case and one in the trust case. Richard alleged that, prior to filing the civil case, Laura broke into Daniel's office and "stole at least four computer hard drives, one large file cabinet and numerous other files, all containing private and confidential information, including attorney-client privileged materials relating to the exact issues in this case." (Boldface omitted.) Richard argued that this constituted "substantial litigation misconduct" that nothing short of terminating sanctions could address, because there was no way to purge Laura's mind of the privileged information she had learned by taking the materials.

Richard supported the motions with his own declaration, as well as the declarations of David Hamer (controller and chief financial officer of one of Daniel's companies), Jolene Kearns (Daniel's personal assistant and bookkeeper), and Kenneth Wolf (Daniel's estate-planning attorney).

Richard's declaration states that he has reviewed "portions, but not all, of the documents contained on the hard drives Laura stole from the office" and found "numerous documents pertaining to [Daniel's] private financial affairs, confidential communications with numerous others, and a host of communications [with] either Daniel or [Richard], or [both] of [them] together, had with various lawyers we had retained to provide legal advice regarding [Daniel's] trust, various . . . companies we have established, and concerning Laura." (Capitalization omitted.) Richard further declared that he had "found numerous communications on the computers with

5

[Daniel's] long-time estate planning attorney and my attorney, Kenneth Wolf," and that he "uncovered several otherwise privileged communications with . . . Wolf pertaining to the exact issues in this litigation," including: (1) [Richard's] appoint[ment] as trustee and manager for various entities related to the trust; (2) [Richard's] manag[ement] [of] entities related to the trust, including entities named as defendants in [the complaint]; (3) [Trust instruments, and related documents, including ones concerning] Laura's rights under the trust; (4) Laura's role in various entities related to the trust; (5) [M]onthly ongoing expenses of the trust and various related entities; (6) [A]ssets held by the trust, including assets discussed in the complaint; (7) Engaging current litigation counsel; (8) [Daniel's] health; (9) [Daniel's] and the trust's finances; and (10) [A]ctions [Richard has] taken on [Daniel's] behalf." (Capitalization omitted.) Richard further declared that he had also found on the hard drives emails with another attorney discussing "corporate issues regarding . . . entities related to the trust," "gift and estate issues between [Daniel] and [Richard]," and "[Daniel's] asset and debt issues, including related tax issues." (Capitalization omitted.)

Attorney Wolf declared that "[d]uring the course of [his] attorney/client relationship with [Daniel], there have been many emails between us that contain privileged information concerning discussions regarding family members and [Daniel's] estate plan," that he "believe[s] there have been email exchanges between [Daniel] and [Wolf] that review and summarize various encounters between [Daniel] and Laura," and that "[t]hese emails would be retained on [Daniel's] computer, and possibly on [Kearns's] computer." The Wolf declaration also includes a list of topics Wolf believes the email exchanges that he has had with

6

Daniel and Richard over the years have addressed, including, for example, Laura's role in various entities in the trust.

The Hamer and Kearns declarations spoke generally to the contents of the computer hard drives and files at issue in a manner consistent with Richard's declaration and the Wolf declaration.

### 2. *Notice of Non-Opposition and Supporting Declarations*

On July 29, 2021, Richard filed a notice of non-opposition to his own motions relaying additional events that had taken place since the filing of those motions. An additional Kearns declaration filed in support of the notice described how, two days after Richard filed and served the motions for terminating sanctions, Kearns arrived at Daniel's office to find that Laura had entered the office without permission and taken 25 boxes of files belonging to Daniel. Kearns further declared that she physically wrestled another box of files from Laura's hands that Laura was attempting to take after being asked to leave the office. In the notice of non-opposition, Richard argued that these events further supported the relief he sought in his sanctions motions.

### C. Laura's Opposition

In her opposition,[5] Laura argued that terminating sanctions would be unjustified because her actions did not

---

[5] Although the record is unclear, Laura appears to have filed a written opposition only in the trust case. Still, she opposed the motions for sanctions in both cases in her argument to the court at the consolidated hearing and explained then that her written opposition was intended to be directed at both.

7

constitute extreme litigation misconduct, and because Richard had failed to establish the files she took pertain to any causes of action still viable after Richard's demurrers.

Laura filed her own declaration as the sole support for her opposition.[6]  In it, she declared that she had entered Daniel's office in December 2020 "using a key that [she] had been given by [her] father long ago," taken "a file cabinet which contained documents that [she] believed might be important and relevant to [her] case and [four] computer hard drives," and placed them in storage.  She declared that she had done so because she had feared Richard would destroy the files once he learned she was suing him, and because her attorneys had advised her that, as a family member, she had a right to possess trust records, and could therefore take the files in order to assure they would not be tampered with.  According to her declaration, Laura had "on several occasions informed [Kearns] and [Daniel's] wife, Susan . . . that [Laura] would be taking files from the office in

_____

Moreover, the court indicated it considered Laura's opposition in deciding both motions.  We thus treat the opposition in the record as applicable to both motions.

[6] Laura's opposition references a declaration from Laura, which was not included in her request for judicial notice or the appendix she submitted on appeal.  Included in Richard's appendix on appeal is a declaration from Laura "in support of [the] opposition to [the] motion for order imposing terminating sanctions."  (Boldface and capitalization omitted.)  This declaration contains no file stamp, and the case number thereon is for the civil case, not the trust case.  However, the proof of service claims it was served on the same date the opposition filed in the trust case was filed and served.  The contents of the declaration support the assertions made in Laura's opposition.

8

order to preserve the information contained therein," and had advised Kearns "to take a copy of the files on her hard drive home as [Laura] was going to take the computers." (Capitalization omitted.) Laura also claimed she had informed Kearns she would be placing the files in a storage facility and offered Kearns the key, but Kearns had declined. "Although [Kearns] knew [Laura] was going to take the files and computers, [Laura] [did] not believe that [Kearns] [had] disclosed this to Richard as [Kearns] is extremely intimidated by and afraid of Richard and would do nothing that would jeopardize her employment or the other benefits she receives from Richard," or her role as a beneficiary of the trust he was administering. Laura declared that "[i]n mid-January 2021, when [she] felt the files would be safe from destruction, . . . [she] returned the file cabinet and the computers completely intact."

As to the second incident Richard described in his notice of non-opposition, Laura further declared that in July 2021 she had been "informed that Richard had removed boxes of documents from the storage area at [Daniel's] office and had put them out to be picked up for shredding. Concerned that these boxes may contain documents that were important to [her] case, [she] [had] decided to take them and put them in storage." Laura's declaration describes Laura calling Daniel's wife, Susan, and "[telling Susan she] was going to take the boxes," to which Susan responded by confirming they were to be shredded, discussing "how afraid [Kearns] was of Richard, [and] that [Kearns] was stuck in the middle between Richard and [Laura]," and "[telling Laura] to go ahead and take the boxes and [Susan] would look back into what was going on." Laura declared that she had gone to Daniel's office the next day, found it unlocked,

9

and removed the 25 boxes of files. "Several days after [Laura] removed the boxes, Susan called [Laura] to tell [Laura] that Richard's lawyer had advised him that shredding documents at this time made him look bad, therefore [Laura] did not need to worry about Richard destroying any more documents." Laura therefore returned the boxes "intact." Laura declared that she had neither looked at, nor made any copies of, any documents or files that she took from Daniel's office on either occasion.

## D. Richard's Reply

Richard filed a reply to the opposition, as well as a Kearns declaration in support of the reply. This Kearns declaration states that, while Laura had spoken with Kearns about getting access to the documents "for years," she never acted on it, and Kearns had no reason to believe she ever would. Kearns declared she had called the police to report the theft of the files and computer hard drives and "would not have done so if [she] had known that Laura was coming to take documents and computers and had agreed [Laura] could take them."

## E. Laura's Unsuccessful Request for an Evidentiary Hearing

Laura timely requested an evidentiary hearing on both motions for terminating sanctions.[7] (See Cal. Rules of Court, rule 3.1306(b).) She identified specific witnesses, the live testimony of which she argued was necessary to allow the court to fairly resolve key factual disputes created by the declarations

---

[7] On the court's own motion, we hereby take judicial notice of the request for an evidentiary hearing Laura filed in the trust case.

in the record.  These issues included, for example, whether Laura had "[broke] into her father's office and who is entitled to possession of the documents in question."  Three of the witnesses she identified had submitted declarations to support Richard's motions.  She argued that requiring these declarants to testify live would "allow [her] to demonstrate . . . that [their declarations] . . . were carefully crafted and contrived and are the result of manipulation by [Richard]" and "contain facts that are colored by [Richard's] unmitigated power over [them] as he is their employer and holder of the purse strings."  She argued that the court could only assess these declarants' credibility in light of these issues through live testimony and cross-examination.

Laura's request also identified three potential witnesses from whom Laura represented she had not been able to obtain declarations:  Susan (Daniel's wife), Elizabeth Gottlieb (Laura's daughter), and Daniel's accountant, Alec Cast.  Laura argued that Susan and Elizabeth could offer testimony relevant to "discussions [Susan and Elizabeth] had with [Laura] regarding the documents in question, [Susan and Elizabeth's] consent and agreement as to the need to preserve documents, and to [Laura's] right to possession of these documents."  She described Cast as able to offer testimony relevant to "unethical, manipulative and coercive behavior[s] by [Richard]," which she argued was relevant both to the credibility of Richard's declarants' testimony, and to establish the basis for her fearing Richard would destroy the documents.

11

## F. Hearing and Ruling on Motions for Terminating Sanctions

At a consolidated hearing on the two sanctions motions on November 1, 2021, the court denied Laura's request for an evidentiary hearing. The court then heard arguments on, and ultimately granted, the motion for terminating sanctions in both the civil case and the trust case. The court asked counsel to prepare "a findings and order," to which counsel responded he would do so "in both cases" and prepared two identical proposed orders. The court signed the order in the trust case in November 2021, and the identical order in the civil case in December 2021. Both orders contain findings that Laura "improperly obtained confidential and attorney-client privileged documents that belong to Richard . . . and/or Daniel . . . by removing [four] computer hard drives and numerous paper files from [Daniel's] office (the 'documents') on two separate occasions . . . . The documents include attorney-client privileged communications that are central to the issues in this litigation . . . . The court further finds that no lesser sanction would be appropriate because Laura's improper knowledge cannot be purged and the litigation thus cannot go forward given Laura's improper actions which have irrevocabl[y] tainted these proceedings. Accordingly, this litigation must be dismissed with prejudice as a terminating sanction." (Capitalization omitted.)

Laura timely appealed the order granting terminating sanctions in the civil case. She did not appeal the order granting terminating sanctions in the trust case.

12

## DISCUSSION

Laura argues the trial court abused its discretion by imposing terminating sanctions in the civil case, both because it did so without an evidentiary hearing, and because terminating sanctions were too harsh on the facts presented. Richard disagrees and further contends that Laura's appeal is moot. We conclude Laura's appeal is not moot, and agree with her that the court abused its discretion in denying her request for an evidentiary hearing. We thus reverse and remand for the court to conduct such a hearing and need not reach the other issue Laura raises on appeal.

### A. Issue Preclusion Does Not Render Laura's Appeal Moot

Richard argues the doctrine of issue preclusion bars Laura from "relitigating" in the civil case the findings with which the court justified the imposition of terminating sanctions in the trust case. Because Laura is precluded from contesting these findings, Richard argues, she cannot prevail on the motion for sanctions in the civil case, and we cannot grant her effective relief in her appeal from the civil case sanctions order, rendering that appeal moot. The findings underlying the trust case sanctions order that Richard contends have issue preclusive effect are: (1) that Laura "improperly obtained" the hard drives and documents at issue (that is, that she did not have authority to take them), (2) that these materials "include attorney-client privileged communications that are central to the issues in [the civil case]," and (3) that Laura thereby obtained "improper knowledge [that] cannot be purged."

We disagree that the doctrine of issue preclusion applies to these findings in the trust case. Issue preclusion "prevents

13

relitigation of previously decided issues." (*DKN Holdings, supra,* 61 Cal.4th at p. 824.) "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.) There can be no dispute that the first two requirements are satisfied here: The sanctions order in the trust case has become final, and the court made the exact same findings in the two orders, so they address the same issues. The key question for our purposes is whether these issues have been "actually litigated." (*Ibid.*)

In order for an issue to have been "actually litigated," the parties must have had a meaningful opportunity to present evidence on the issue. (See *Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 404 (*Murphy*) ["where, as here, the party to be estopped was a party who participated in the earlier proceeding, due process requires that this party . . . [citation] . . . must have had a fair opportunity to pursue his claim the first time"]; accord, *Wright v. Ripley* (1998) 65 Cal.App.4th 1189, 1193 ["collateral estoppel should not be applied if there was no opportunity for a full presentation of the issue in the first proceeding"]; *Barker v. Hull* (1987) 191 Cal.App.3d 221, 226 (*Barker*) [discussed below].) This does not require the party seeking estoppel to "establish that any particular type of evidence, such as oral testimony, was presented" or permitted, but rather that the opportunity to present evidence was not unreasonably restricted. (See *Barker, supra*, at p. 226.)[8] Thus, "[a] mere showing that affidavits were

---

[8] The holding of *Barker*—if taken literally—goes one step beyond this proposition, holding that when a party's opportunity to present evidence on an issue in a prior proceeding is restricted

14

submitted may not be sufficient to carry the burden of proving that the issue was actually litigated" (*Barker*, *supra*, at p. 226), depending on the restrictions placed on the party's ability to present evidence and the overall circumstances of the proceedings below.

Here, the court's refusal to hold an evidentiary hearing in the trust case improperly and unreasonably restricted Laura's ability to present evidence on the issues Richard argues she is estopped from litigating including her authority to take the materials, whether she believed she had permission to remove the materials, whether the materials contained privileged information relevant to the litigation, how important the privileged communications were to the cases, and whether Laura read the materials with such content. The declarations presented to the court contained conflicting accounts of whether Kearns and/or Susan had given Laura permission to remove the documents from the premises. In her request for an evidentiary hearing and supporting declaration, Laura explained her theory that Kearns was either afraid of or financially beholden to Richard, and that this motivated Kearns's account of events in her declaration. Such bias could only be explored through cross-examination of Kearns at a hearing and/or through live testimony from Susan, from whom Laura claims she was unable to obtain a declaration. Laura had thus identified a specific way in which live testimony, as opposed to declarations, was

_____

*at all*, collateral estoppel will not apply. (See *Barker*, *supra*, 191 Cal.App.3d at p. 226 ["the party urging the estoppel must prove that the issue was actually litigated and that evidence was not restricted," italics omitted].) Such an expansive proposition, however, is not necessary to support our decision.

15

necessary in order to resolve a key factual dispute bearing on her authority to take the materials at issue. Particularly given the extreme nature of the relief sought, we see no reasonable basis in the record for the court to deny her this opportunity.

As to the second issue Richard argues Laura is precluded from litigating, to establish that the materials Laura took included attorney-client privileged information relevant to the litigation, Richard offered declarations generally describing the types of documents contained in and the general topics addressed in the materials Laura took. Laura could not meaningfully contradict these declarations without the evidentiary hearing she requested. She claimed to have never reviewed the materials, so she could not offer a declaration contradicting Richard's declarants on this issue. The materials were no longer in her possession, nor would she have a right to review them to the extent they are indeed privileged. At an evidentiary hearing, Laura could have further explored the declarants' general description of the materials through cross-examination, or even requested that the court review portions of the materials in connection with resolving this factual dispute or order a reference for such examination. By denying her a path to meaningfully contradicting the general and anecdotal declarations Richard offered to establish the contents of the materials at issue, the court improperly restricted Laura's ability to present evidence on the nature of those materials.

The parties thus did not "actually litigate" the first two findings that form the basis for the court's sanctions order in the trust case. It follows that the sanctions order in the trust case cannot estop Laura from arguing that the court should have made different findings in assessing the same issues in

16

the civil case.  And the third finding underlying the trust case sanctions order relies on the prior two—that is, Laura cannot have obtained improper knowledge relevant to the litigation if she did not improperly take materials containing privileged information relevant to the litigation.  Thus, this third finding was also not on an issue "actually litigated," and none of the court's findings underlying the trust case sanctions order preclude contrary findings in the civil case.

Finally, not only is a requirement for issue preclusion to apply lacking, the "application of collateral estoppel will [not] advance the public policies which underlie the doctrine"—namely, " ' " ' "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." ' [Citations.]" [Citation.]' " (*Murphy*, supra, 164 Cal.App.4th at p. 404.)  The fact that the two rulings at issue here were decided as one at a singular hearing and discussed as one lessens the applicability of the first and third of these policies.  There is a risk of an apparent inconsistency between rulings if, depending on the outcome of the instant appeal and proceedings on remand, the court denies the sanctions motion in the civil case even though the court granted a motion on the exact same basis in the trust case.  But through the actually litigated requirement, the doctrine of issue preclusion permits inconsistent rulings to the extent that the earlier of the two inconsistent rulings was not actually litigated.  That is the case here.

Accordingly, issue preclusion does not apply and we conclude that Laura's appeal is not moot.

17

## B. Denial of Evidentiary Hearing

Turning to the merits of Laura's appeal, Laura argues the court reversibly erred by denying her request for an evidentiary hearing on Richard's motion for sanctions in the civil case. Evidence "received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown." (See California Rules of Court, rule 3.1306(a).) Therefore, to support her request for an evidentiary hearing, Laura needed to identify good cause. We review the court's determination that Laura failed to make such a showing for an abuse of discretion. (See *California School Employees Assn. v. Del Norte County Unified Sch. Dist.* (1992) 2 Cal.App.4th 1396, 1405.) Richard correctly points out that a trial court enjoys "broad discretion" to resolve an issue "on the basis of declarations and other documents[,] rather than live, oral testimony," and that under the applicable rule, this is indeed the default procedure. (*Ibid.*) Nevertheless, "[i]n exercising its discretion to either allow or exclude oral testimony, . . . the trial court should be guided by the constitutional principle that '[d]ue process guarantees " ' . . . [an] opportunity for hearing *appropriate to the nature of the case.*' " [Citation.]' " (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1500.)

Here, the court did not limit or exclude testimony from certain witnesses that was not material to the terminating sanctions issued—it denied Laura any evidentiary hearing whatsoever. Above, we explained our conclusion that the court's denial of an evidentiary hearing in the trust case improperly restricted Laura's ability to present evidence on the sanctions motion in that case. For these same reasons, we conclude that by

18

denying Laura an evidentiary hearing on the sanctions motion in the civil case, the court also denied her an adequate opportunity to present evidence meaningfully opposing the motion, and thus acted outside the scope of its admittedly broad discretion.  (See *Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 275 [a trial court's discretion must " ' "be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice" ' "]; cf. *California School Employees Assn., supra*, at p. 1405 [finding denial of evidentiary hearing not an abuse of discretion where "[t]he facts were adequately presented by the declarations and documents proffered by the parties"].)

This abuse of discretion also prevented Laura from meaningfully challenging the evidence Richard offered to support findings necessary to the court's order imposing terminating sanctions.  Accordingly, the court's order granting the sanctions motion reflects an abuse of discretion as well.

## DISPOSITION

The trial court's order granting Richard's motion for terminating sanctions is reversed. Upon remand, the trial court shall hold an evidentiary hearing on Richard's motion for terminating sanctions, and conduct any further proceedings thereafter that it deems necessary and proper.

The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

I concur:

WEINGART, J.

20

CHANEY, J., Dissenting.

I agree that "issue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party," and that an issue is "actually litigated" if the opportunity to present evidence was not unreasonably restricted.  (*DKN Holdings*, *supra*, 61 Cal.4th at p. 825; *Murphy*, *supra*, 164 Cal.App.4th at p. 404; *Barker, supra*, 191 Cal.App.3d at p. 226.)  I disagree that the trial court's refusal to grant Laura's eleventh-hour request for an evidentiary hearing was an abuse of discretion or unreasonably restricted her opportunity to present evidence.  I would therefore find that issue preclusion applies and affirm the trial court.

Preliminarily, I note that Laura did not appeal the court's denial of her evidentiary hearing request in the trust case, resulting in a final adjudication that the court did not err in denying that request.  I find that this final adjudication precludes us from finding otherwise in this appeal.

Even were we permitted to consider the issue, the majority states that the denial of Laura's request prevented her from (1) presenting evidence on whether Kearns and/or Susan had given Laura permission to remove the documents from the premises and Laura's theory that Kearns was either afraid of or financially beholden to Richard; and (2) exploring Richard's general descriptions of the materials taken, and concludes that these issues could have been explored only through cross-examination and live testimony.  But another avenue was open to Laura—in the more than two months that elapsed between the filing of the motions and the court's hearing of them, Laura could have

deposed Kearns, Susan, or any of the other witnesses whose credibility and/or bias she wished to challenge or from whom she had trouble securing a declaration. She could then have submitted transcripts or video excerpts from those depositions that she believed demonstrated bias or challenged the credibility of their declarations. Although Laura had several months to request an evidentiary hearing, she made her request on the last possible day,[1] without explaining why she could not obtain declarations from the witnesses she wished to call, what efforts she undertook to obtain such declarations, what other efforts she expended to secure the allegedly relevant testimony, or, alternatively, why she could not expend those efforts.[2]

As to the issue of whether the materials Laura took contained attorney-client privileged information, the majority holds that an evidentiary hearing was required so Laura could "explore" the general descriptions submitted of those materials or could ask the court to conduct an in camera review. Laura did not need an evidentiary hearing to request an in camera review—such a request could have been made in writing, or orally by

_____

[1] (Cal. Rules of Court, rule 3.1306(b) ["A party seeking permission to introduce oral evidence [at a hearing] . . . must file, no later than three court days before the hearing, a written statement stating the nature and extent of the evidence proposed to be introduced and a reasonable time estimate for the hearing"].)

[2] It is not rare for one party to suggest that another party or witness lied or is biased. If such a charge precluded a trial court from denying a request for an evidentiary hearing, then virtually no motions supported by declarations could be resolved without live testimony. This would place an unwarranted burden on our already overburdened courts.

2

Laura's counsel at the hearing.  And Laura did not contend in either her opposition to the motions or her request for an evidentiary hearing that the descriptions of the materials were too general, or that she wished to proffer evidence as to their nature.  On the issue of privilege, she argued only that the material she took no longer related to the issues that remained in the case.  Moreover, as discussed above, if Laura wanted to "explore" the privileged nature of the material she took, she could have deposed the individuals whom she believed possessed that information.

On this record, I find that the trial court acted within its discretion in denying Laura's last-minute request for an evidentiary hearing, and that this denial did not improperly deprive her of a meaningful opportunity to present evidence.  I therefore respectfully dissent.


CHANEY, J.